# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RUBY RISOS-CAMPOSANO,<br><br>        Plaintiff,<br><br>    vs.<br><br>NEVADA SYSTEM OF HIGHER<br>EDUCATION, et al.,<br><br>        Defendants. | Case No.: 3:14-cv-00181-RCJ-VPC<br><br><br><br>**ORDER** |

This proceeding arises out of alleged employment discrimination. Pending before the Court is Defendants' Motion for Judgment on the Pleadings or, in the alternative, Motion for Summary Judgment (ECF No. 41). For the reasons given herein, the Court grants the motion in part and denies the motion in part.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiff alleges she was terminated from her position at the Nevada System of Higher Education ("NSHE") and otherwise treated wrongfully for discriminatory purposes and in retaliation for her previous complaints to the Equal Employment Opportunity Commission ("EEOC"). (*See* Compl., ECF No. 1-1). Plaintiff also alleges NSHE wrongfully interfered with her right to intermittent leave provided for by the Family Medical Leave Act ("FMLA"). (*Id.* ¶¶ 64–68). Plaintiff brings this action against the following parties: NSHE; Victor Redding, NSHE's Vice Chancellor for Finance and Administration; Christine Casey, NSHE's Human

Resources Director; and Daniel Klaich, NSHE's Chancellor (collectively, "Defendants"). (*Id.*
¶ 4).

**A.      First EEOC Charge**

In June 2012, Plaintiff requested a review to determine whether her salary for her
position as Director of Banking and Investment at NSHE was commensurate with other similar
positions. (*Id.* ¶¶ 6–7). Plaintiff alleges that Casey denied the request and refused to conduct a
formal salary study. (Compl. ¶ 8). In September 2012, based upon Casey's alleged refusal to
conduct the study, Plaintiff filed an EEOC charge, alleging race and national origin
discrimination. (*Id.* ¶ 13; *see also* Mot. J. Pleadings and/or Mot. Summ. J. Ex. D, ECF No. 41-1,
at 9). Plaintiff alleged she was being discriminated against because she is Asian and of Filipino
national origin, while her white co-workers received promotions and salary increases. (Compl.
¶¶ 3, 12). The parties settled the charge in December 2012 with a Settlement Agreement. (*Id.*
¶ 13).

As part of the Settlement Agreement, the parties executed two documents. Under the first
document, an EEOC form settlement agreement, Plaintiff agreed not to institute a lawsuit under
Title VII of the Civil Rights Act of 1964 ("Title VII") in exchange for a $500 payment. (*See*
Mot. J. Pleadings and/or Mot. Summ. J. Ex. E, ECF No. 41-1, at 11–13). Under the second
document, a "Mutual Settlement Agreement" drafted by the parties, Plaintiff agreed to dismiss
her EEOC claim with prejudice. (*See* Mot. J. Pleadings and/or Mot. Summ. J. Ex. F, ECF No.
41-1, at 15–19).

**B.      Subsequent EEOC Charges**

In July 2013, based on receiving a "satisfactory" rating in a performance evaluation, a
rating Plaintiff alleges is the lowest an employee can receive, Plaintiff filed another EEOC
charge. (Compl. ¶¶ 14, 16). This charge alleged that Plaintiff should have received an

"outstanding" rating in the evaluation, and Plaintiff's poor evaluation constituted retaliation against Plaintiff for initiating the September 2012 EEOC charge. (*Id.* ¶¶ 16, 27; *see also* Mot. J. Pleadings and/or Mot. Summ. J. Ex. H, ECF No. 41-1, at 26).

In September 2013, NSHE re-assigned Plaintiff to different job duties and terminated Plaintiff's employment with NSHE effective June 30, 2015. (Compl. ¶¶ 29, 38, 39). In October 2013, Klaich denied Plaintiff's request for reconsideration of the re-assignment and termination. (*Id.* ¶ 40). In November 2013, Plaintiff filed an additional EEOC charge, alleging the re-assignment and termination constituted further retaliation against her for filing the previous EEOC charges. (*See* Mot. J. Pleadings and/or Mot. Summ. J. Ex. L, ECF No. 41-1, at 38). In January 2014, Plaintiff received two right-to-sue letters from the EEOC based on Plaintiff's allegations in the July 2013 and November 2013 EEOC charges. (Mot. J. Pleadings and/or Mot. Summ. J. Ex. M, ECF No. 41-1, at 40–41).

Plaintiff further alleges that due to a pregnancy complication, Plaintiff requested "flex time" under the FMLA, which would permit Plaintiff to leave work intermittently up to three days per week. (Compl. ¶¶ 65–66). According to Plaintiff, NSHE approved leave for Plaintiff, but rejected her request for intermittent leave, instead mandating that Plaintiff designate the precise days she would be gone. (*Id.* ¶ 67).

C.      **The Present Case**

Plaintiff sued Defendants in Nevada state court for: (1) race-based and national origin-based discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e-2(a) and -3(a), against NSHE only; (2) infringement of free speech rights under the First Amendment, the Fourteenth Amendment, the Nevada Constitution, and NSHE Code provisions against NSHE only; (3) First Amendment retaliation pursuant to 42 U.S.C. § 1983 against Redding, Casey, and Klaich; (4) "defamation per se" against Redding only; (5) "defamation-plus" pursuant to 42

U.S.C. § 1983 against Redding only; (6) breach of an agreement not to retaliate against Plaintiff against NSHE only; and (7) interference with Plaintiff's right to intermittent FMLA leave against NSHE only.

Defendants removed the action to this Court and answered Plaintiff's Complaint. Defendants now move for judgment on the pleadings or, in the alternative, summary judgment as to Plaintiff's first, second, third, fifth, and seventh claims for relief. Plaintiff opposes the motion.

## II.     LEGAL STANDARDS

### A.      Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standards governing a Rule 12(c) motion are the same as those governing a Rule 12(b)(6) motion. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference . . . is the time of filing. . . . [T]he motions are functionally identical . . . .").

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in

the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Unlike the word's lay definition, "plausibility" under Rule 8(a) is not a factual test of the likelihood a plaintiff's allegations are true, but a legal test of whether the allegations, if assumed to be true, entitle the plaintiff to relief. Under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), but also must allege the facts of his case so that the court can determine whether the plaintiff has any basis for relief under the legal theory he has specified or implied (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

*Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court

considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.

2001).

  **B.**  **Summary Judgment**

  A court must grant summary judgment when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute as to

a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict

for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and

dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.

Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining summary judgment, a court uses a burden-

shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at
> trial, it must come forward with evidence which would entitle it to a directed
> verdict if the evidence went uncontroverted at trial. In such a case, the moving
> party has the initial burden of establishing the absence of a genuine issue of fact
> on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations

and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden

of proving the claim or defense, the moving party can meet its burden in two ways: (1) by

presenting evidence to negate an essential element of the nonmoving party's case; or (2) by

demonstrating that the nonmoving party failed to make a showing sufficient to establish an

element essential to that party's case on which that party will bear the burden of proof at trial.

*See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden,

summary judgment must be denied and the court need not consider the nonmoving party's evidence. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. See Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. See *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

///

///

///

///

III.     **ANALYSIS**

    **A.     First Claim for Relief Against NSHE**

    **1.     Discrimination Claim Under Title VII**

Under Title VII, an employer may not limit the employment opportunities, discharge, or otherwise discriminate against an individual on the basis of the individual's race or national origin. 42 U.S.C. § 2000e-2(a). NSHE moves for judgment on the pleadings and/or summary judgment of the portion of Plaintiff's Title VII claim that relates to race-based and national origin-based discrimination, arguing that any discrimination claim is foreclosed by the parties' 2012 Settlement Agreement. (*See* Mot. J. Pleadings and/or Mot. Summ. J. Exs. E–F, ECF No. 41-1, at 11–19).[1] In response, Plaintiff maintains that the issues raised in this litigation do not pertain to allegations in the 2012 EEOC charge but rather arise from the allegations in the July and November 2013 EEOC charges. (*See* Opp'n Mot. J. Pleadings and/or Mot. Summ. J., ECF No. 44, at 1). These two most recent EEOC charges make reference to both retaliation and discrimination. (*See* Mot. J. Pleadings and/or Mot. Summ. J. Exs. H, L, ECF No. 41-1, at 26, 38). The Court therefore grants Defendants' motion for judgment on the pleadings as to the first claim for relief to the extent Plaintiff claims NSHE discriminated against her in 2012, charges since settled by the parties pursuant to the Settlement Agreement. The Court denies the motion to the extent Plaintiff's claims encompass discrimination that occurred after the Settlement

---

[1] The Court notes that Defendants have failed to authenticate most of their evidence and instead refer to the evidence as "Exhibits" within the body of their Motion. "[D]ocuments which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988) (quoting *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)). However, the Court also notes that if a competent witness could authenticate the contents of the document at trial, it may be improper for the Court to bar the evidence at the summary judgment stage. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). The Court therefore concludes it would be improper to exclude Defendants' evidence for lack of foundation, since competent witnesses could likely authenticate the contents of these documents at trial.

Agreement. Because Defendants argue this issue as a matter of law and submit no other evidence for the Court to consider, the Court denies Defendants' motion for summary judgment on this issue.

### 2.    Retaliation Claim Under Title VII

NSHE argues Plaintiff's "satisfactory" employment rating cannot support her Title VII retaliation claim. Title VII makes it unlawful for employers to retaliate against employees who report workplace discrimination on the basis of race or national origin. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation a plaintiff must show that (1) she was engaged in an activity protected by Title VII, (2) her employer subjected her to an adverse employment action, and (3) a causal connection exists between the two. *Manatt v. Bank of Am.*, 339 F.3d 792, 800 (9th Cir. 2003) (citing *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)). If a plaintiff makes out a prima facie case, the burden shifts to the employer to advance "legitimate, nondiscriminatory reason[s]" for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the employer rebuts the presumption of retaliation, the plaintiff must put forth "specific, substantial evidence" of pretext. *Collings v. Longview Fibre Co.*, 63 F.3d 828, 833–34 (9th Cir. 1995) (quoting *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)).

NSHE argues that Plaintiff does not make out a prima facie case of retaliation under Title VII. While NSHE concedes that Plaintiff was engaged in a protected activity when she filed her first EEOC charge, NSHE argues that Plaintiff's "satisfactory" evaluation rating was not sufficiently final to constitute an "adverse employment action." NSHE acknowledges that an undeserved negative performance review can, if proven, constitute an adverse employment action, *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987), but argues that under *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000), a performance review must be "sufficiently final" and cannot be subject to the employer's modification. *Brooks* held that

because an employment decision was appealable and because the employee left his position while the appeal was pending, the review was not sufficiently final and therefore was not an adverse employment action. *Id.*

NSHE submits evidence that a Peer Review process to appeal Plaintiff's "satisfactory" evaluation rating was available to Plaintiff under the NSHE code provisions. (*See* Mot. J. Pleadings and/or Mot. Summ. J. Ex. G, ECF No. 41-1, at 22). Plaintiff admittedly did not avail herself of this process. (*See* Camposano Decl., ECF No. 44-1, at 1). NSHE argues that Plaintiff's failure to pursue a Peer Review appeal shows the evaluation's lack of finality, meaning it cannot constitute an adverse employment action. Plaintiff argues that because she requested but was denied reconsideration of the evaluation from the Chancellor, and because the availability of Peer Review was not made known to her, the "satisfactory" evaluation was sufficiently final.

Cases interpreting *Brooks* demonstrate that an employer's action is not sufficiently final when an appeals process is pending or when the action is, on its face, a temporary or proposed action. *See, e.g.*, *Cefalu v. Holder*, 2013 U.S. Dist. LEXIS 136917, at *49 (N.D. Cal. Sept. 23, 2013) (finding a proposed suspension that was never implemented not sufficiently final); *Jones v. Las Vegas Valley Water Dist.*, 2012 U.S. Dist. LEXIS 95743, at *9–10 (D. Nev. July 11, 2012) (Dawson, J.) (finding an employer's rescinded action not "final or lasting"); *Gannon v. Potter*, 2006 U.S. Dist. LEXIS 85995, at *11–12 (N.D. Cal. Nov. 28, 2006) (holding a "Notice of Proposed Removal" was appealable and therefore not final, especially because the removal was proposed "on its face"). In a recent case from the Northern District of California, the plaintiff alleged his employer retaliated against him by giving him an undeserved performance appraisal. *Leglu v. Cnty. of Santa Clara*, 2014 U.S. Dist. LEXIS 117451, at *21 (N.D. Cal. Aug. 20, 2014). It was undisputed that the plaintiff had submitted two appeals seeking administrative review of his appraisal, the outcome of which had yet to be decided. *Id.* at *22. The court determined that

the plaintiff's performance review was not sufficiently final to constitute an adverse employment action because of the pending appeals process. *Id.*

In this case, Plaintiff's evaluation rating was neither "proposed" nor temporary. Plaintiff did not abandon an appeals process mid-way through.  Instead, she sought reconsideration of her evaluation from the Chancellor and received an unequivocal denial to her request. Plaintiff thereafter experienced the adverse effects of the evaluation rating in the form of her reassignment and termination from NSHE. There is no allegation or evidence that NSHE plans to rescind or modify Plaintiff's evaluation rating. Additionally, the NSHE code provisions show that even if Plaintiff had requested a Peer Review process, the Peer Review committee's recommendation was still subject to approval by the Chancellor. (*See* Mot. J. Pleadings and/or Mot. Summ. J. Ex. G, ECF No. 41-1, at 24). Together, these facts show that Plaintiff's performance evaluation rating was sufficiently final to constitute an adverse employment action. In reaching this decision, the Court rejects NSHE's argument that Plaintiff should have used the Peer Review process provided for in NSHE's code provisions. NSHE provides no authority, and the Court could find none, to support the proposition that Plaintiff had to pursue an appeals process unknown to her in order to maintain her retaliation claim. Under *Brooks*, the purpose of the finality requirement is to "[dis]courage litigation before the employer has an opportunity to correct through internal grievance procedures any wrong it may have committed." 229 F.3d at 930 (quoting *Dobbs-Weinstein v. Vanderbilt Univ.*, 185 F.3d 542, 546 (6th Cir. 1999)). The Court's conclusion on this issue comports with this purpose.

Plaintiff adequately alleges a prima facie case of retaliation under Title VII, and the Court therefore denies Defendants' motion for judgment on the pleadings as to Plaintiff's first claim for relief. As Defendants fail to argue a lack of evidence of Plaintiff's prima facie case for

retaliation, *Celotex*, 477 U.S. at 323–24, and similarly fail to rebut the presumption of retaliation, the Court also denies Defendants' motion for summary judgment on this issue.

### B.    Second Claim for Relief Against NSHE

NSHE argues Plaintiff's second claim for relief for violation of free speech rights fails based on NSHE's Eleventh Amendment immunity. Eleventh Amendment immunity is a jurisdictional bar. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002). As affirmed in prior case law, NSHE is immune from suit under the Eleventh Amendment as an arm of the state of Nevada, *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 883. n.17 (9th Cir. 2004), and Nevada has not waived its Eleventh Amendment immunity, Nev. Rev. Stat. § 41.031(3). However, NSHE invoked federal jurisdiction and waived its Eleventh Amendment immunity by removing the case to this court. The Supreme Court in *Lapides* held that a defendant's removal of state law claims to federal court waives its Eleventh Amendment immunity over those claims. 535 U.S. at 624. The Ninth Circuit extended *Lapides* to mean the defendant waives immunity over both state and federal claims when it removes to federal court. *Embury v. King*, 361 F.3d 562, 564 (9th Cir. 2004). *Embury* also held that Eleventh Amendment immunity is waived in federal court even if the state has not waived immunity in its own courts. *Id.* at 564–65. The Court therefore concludes that when Defendants voluntarily removed the case to this court, NSHE waived its Eleventh Amendment immunity over Plaintiff's state and federal claims.

The Court will not consider NSHE's additional arguments raised for the first time in Defendants' reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Therefore, the Court denies Defendants' motion for judgment on the pleadings as to the second claim for relief on Eleventh Amendment immunity grounds. The Court also denies Defendants' motion for

summary judgment as a matter of law given that Defendants submitted no factual arguments for the Court to consider.

### C.     Third Claim for Relief Against Redding, Casey, and Klaich

Plaintiff brings a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 against Defendants Redding, Casey, and Klaich. Defendants argue the claim fails for the following reasons: Plaintiff was not engaged in a constitutionally protected activity, the Defendants had no legal authority to commit the acts Plaintiff alleges were retaliatory, Defendants have qualified immunity, and Plaintiff cannot circumvent the statutory remedial scheme of Title VII with a Section 1983 action.

A First Amendment retaliation claim against a government employer involves a sequential five-step series of questions:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Desrochers v. City of San Bernadino*, 572 F.3d 703, 708–09 (9th Cir. 2009) (citing *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)). Because these are sequential steps, failure to fulfill any one of the factors necessarily concludes the inquiry. *See Huppert v. City of Pittsburg*, 574 F.3d 696, 703 (9th Cir. 2009).

### 1.     Plaintiff's EEOC Charge as Constitutionally Protected Speech

Defendants first argue that Plaintiff's First Amendment claim fails because Plaintiff's EEOC charges did not relate to a matter of public concern and therefore did not contain constitutionally protected speech. Whether an employee spoke on a matter of public concern is for the Court to determine as a matter of law, *Eng*, 552 F.3d at 1070, "determined by the content,

form, and context of a given statement." *Desrochers*, 572 F.3d at 709. However, the "greatest single factor" in determining whether the speech is of a matter of public concern is the content of the speech. *Id.*

The Ninth Circuit broadly defines content as relating to a matter of public concern if it involves "potential or actual discrimination, corruption, or other wrongful conduct by government agencies or officials." *See Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 925 (9th Cir. 2004).  In contrast, "speech that deals with individual personnel disputes and grievances . . . that would be of no relevance to the public's evaluation of the performance of the governmental agencies is generally not of public concern." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)) (internal quotations omitted). Even if an employee's speech concerns a private grievance, the content of the speech can still relate to a matter of public concern to support a First Amendment retaliation claim. *See Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1070 (9th Cir. 2012) (rejecting argument that a city employee's deposition testimony in a civil rights lawsuit was merely a "private grievance" rather than a matter of public concern).

Here, Plaintiff claims she was retaliated against for filing EEOC charges that alleged race and national origin discrimination. Discriminatory practices by state employees, even if directed at only one employee and in isolated incidents, are matters of public concern. *Alpha Energy Savers, Inc.*, 381 F.3d at 926–27. Thus, the content of Plaintiff's EEOC charge relates to a matter of public concern. More importantly, the context of Plaintiff's speech shows an effort to make the alleged discrimination public. Indeed, an EEOC charge is an initial step to engaging in employment discrimination litigation, which courts have already defined as constitutionally protected speech. *Id.* at 927 ("Litigation seeking to expose such wrongful government activity is,

by its very nature, a matter of public concern."). For these reasons, the Court finds that Plaintiffs'

EEOC charges contain speech on matters of public concern.

        **2.**      **Defendants' Authority to Reassign and Terminate Plaintiff**

       Defendants argue that Redding and Casey cannot be liable under Plaintiff's First

Amendment retaliation claim because they did not have the legal authority to reassign and

terminate Plaintiff. Defendants maintain that only Klaich, as Chancellor, had the authority as

final decision maker on these actions. As Plaintiff notes, however, an actor that is not the final

decision maker can still be liable if he or she "set[s] in motion a series of acts by others which

the actor knows or reasonably should know would cause others to inflict the constitutional

injury." *Gilbrook v. City of Westminster*, 177 F.3d 839, 854 (9th Cir. 1999).

       In her opposition, Plaintiff claims that "Redding wrote the recommendation to Klaich and

prepared the evaluation upon which the reassignment and Notice of Non-Reappointment

('NNR') issued" and that "Casey was involved in these communications and meetings." (Opp'n.

Mot. J. Pleadings and/or Mot. Summ. J., ECF No. 44, at 4). While Plaintiff alleges Redding's

involvement in her reassignment and termination in her Complaint, (*see* Compl. ¶ 29), Plaintiff

makes no similar allegations in regards to Casey. That fact that "Casey was involved" generally,

even if proven, is not enough to show that Casey set in motion Klaich's actions of reassigning

and terminating Plaintiff. Therefore, the Court grants Defendants' motion for judgment on the

pleadings as to Plaintiff's third claim for relief against Casey, with leave to amend. The Court

denies Defendants' motion for judgment on the pleadings as to Redding because his involvement

through writing the recommendation, if proven, could support a First Amendment retaliation

claim. However, because Plaintiff provides no evidence of Redding's involvement, the Court

grants Defendants' motion for summary judgment as to Redding on this claim.

///

### 3.     Defendants' Qualified Immunity

Defendants Redding, Casey, and Klaich also claim qualified immunity as to Plaintiff's First Amendment retaliation claim. Qualified immunity shields state officials sued as natural persons from money damages unless the plaintiff shows that: (1) there was a constitutional violation; and (2) the state of the law was clear enough at the time of the violation that a reasonable person in the defendant's position would have known his actions violated the plaintiff's rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts have discretion to address the second prong of the *Saucier* test first in order to avoid unnecessary constitutional rulings. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A "clearly established" right for the purpose of qualified immunity is one that has been announced by the Supreme Court or an applicable Court of Appeals, i.e., binding authority. *See Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004); *see also Dunn v. Castro*, 621 F.3d 1196, 1201 (9th Cir. 2010) ("[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.").

The Defendants are not entitled to qualified immunity as to Plaintiff's First Amendment retaliation claim. The law is clearly established in the Ninth Circuit that retaliation against an employee for filing an EEOC charge for racial and national-origin based discrimination violates the Constitution. *See Alpha Energy Savers, Inc.*, 381 F.3d at 926–27.

### 4.     Title VII as an Exclusive Remedy

Finally, Defendants argue that Plaintiff may not circumvent the "comprehensive" remedial scheme provided for in Title VII by filing a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983. Defendants argue that Title VII provides the exclusive remedy for employment retaliation claims. The Court agrees that Title VII is the exclusive remedy for retaliation claims "created by its own terms." *See Haines v. City & Cnty. of S.F.*, 2013 U.S. Dist.

LEXIS 95692, at *12 (N.D. Cal. July 9, 2013). In other words, Plaintiff may not bring a claim under § 1983 to redress a violation of Title VII.  Plaintiff's third claim for relief, however, seeks to redress a violation of the First Amendment, not a violation of Title VII. Title VII does not provide the exclusive remedy for constitutional violations, and Plaintiff is not foreclosed from bringing this claim. *See id.* at 13 ("[A]n employment discrimination plaintiff asserting a violation of a constitutional right may bring suit under both Title VII and § 1983, even if the claims arise from the same factual allegations.").

In sum, the Court grants Defendants' motion for judgment on the pleadings as to the third claim for relief against Casey, with leave to amend, and denies the motion as to Redding and Klaich. The Court grants Defendants' motion for summary judgment as to Redding and denies the motion as to Klaich.

### D.        Fifth Claim for Relief Against Redding

Plaintiff's fifth claim for relief is for "defamation-plus" against Redding under 42 U.S.C. § 1983 for the allegedly defamatory statements he made about Plaintiff in his memorandum to the Chancellor concerning Plaintiff's professional performance. (*See* Compl. ¶ 29). A "defamation-plus" claim requires the plaintiff to either "allege that the injury to reputation was inflicted in connection with a federally protected right" or to "allege that the injury to reputation caused the denial of a federally protected right." *Crowe v. Cnty. of San Diego*, 593 F.3d 841, 879 (9th Cir. 2010) (internal quotations and citations omitted).  Redding attacks Plaintiff's "defamation-plus" claim pursuant 42 U.S.C. § 1983 by arguing there is no constitutional violation to support the claim, i.e. that Plaintiff's speech in her EEOC charges is not constitutionally protected speech. The Court will not grant Defendants' motion on these grounds for the reasons earlier discussed in this Order. Nonetheless, the Court concludes that Plaintiff fails to allege any plausible damage to her reputation as a result of Redding's memorandum to

Klaich, especially because "[n]one of [Redding's] criticism found its way into the year-end audit report." (Compl. ¶ 29). Therefore, the Court grants Defendants' motion for judgment on the pleadings as to the fifth claim for relief against Redding, with leave to amend.

     **E.**     **Seventh Claim for Relief Against NSHE**

     Plaintiff alleges NSHE interfered with her right to intermittent FMLA leave when it required her to designate the precise days she would be absent from work as a result of a pregnancy complication. The FMLA allows an eligible employee to take up to 12 workweeks of leave during a given 12-month period for medical or family care reasons. 29 U.S.C. § 2612(a)(1). Intermittent leave allows an employee to take leave of work in separate blocks of time due to a single qualifying reason. 29 C.F.R. § 825.203. Intermittent leave must be "medically necessary," as determined by a "serious health condition" of the employee. *Id.* To show a prima facie case for a FMLA cause of action, an employee must show that "(1) the employee was eligible for the FMLA's protections, (2) the employer was covered by the FMLA, (3) the employee was entitled to leave under the FMLA, (4) the employee provided sufficient notice of his intent to take leave, and (5) the employer denied the employee FMLA benefits to which he was entitled." *Weinstein v. AutoZoners LLC*, 2014 U.S. Dist. LEXIS 28942, at *8 (D. Nev. Mar. 6, 2014) (George, J.) (citing *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011)).

     Plaintiff claims NSHE "violated [her] right to intermittent FMLA leave on an as-needed basis" when it "required Plaintiff to designate the precise days she would be on leave." (Compl. ¶¶ 66–67). Here, Plaintiff's request included a note to NSHE from her medical provider which stated that Plaintiff "will only be able to work 3 days a week until further notice due to medical complications." (Mot. J. Pleadings and/or Mot. Summ. J. Ex. N, ECF No. 41-1, at 43). NSHE asserts it approved and accommodated Plaintiff's request, citing as evidence an email from Casey to Plaintiff in which Casey instructed Plaintiff to "establish a regular schedule" with the

caveat that Plaintiff can "of course . . . still leave as needed." (Casey Decl. Ex. B., ECF No. 46-1, at 6).  The only evidence Plaintiff submits to support the allegation that NSHE denied her request for intermittent leave is Plaintiff's declaration which states that intermittent leave would have helped when she was scheduling various medical appointments during her high risk pregnancy. (*See* Camposano Decl., ECF No. 44-1, at 2). Plaintiff thus fails to present any evidence to show that NSHE actually denied any of Plaintiff's requests to leave "as needed." Therefore, while the Court denies Defendants' motion for judgment on the pleadings as to Plaintiff's seventh claim for relief, the Court grants Defendants' motion for summary judgment as to this claim. Plaintiff provides no evidence that NSHE actually interfered with her right to intermittent FMLA leave by denying her requests to leave for medical appointments.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that Defendants' Motion for Judgment on the Pleadings or in the alternative, Motion for Summary Judgment (ECF No. 41) is GRANTED in part and DENIED in part.

As to the first claim for relief for discrimination under Title VII, the Court GRANTS Defendants' motion for judgment on the pleadings to the extent Plaintiff claims NSHE discriminated against her in 2012 but DENIES the motion to the extent Plaintiff's claims include discrimination that occurred after the 2012 Settlement Agreement. The Court DENIES summary judgment.

As to the first claim for relief for retaliation under Title VII, the Court DENIES Defendants' motion for judgment on the pleadings and DENIES summary judgment.

As to the second claim for relief, the Court DENIES Defendants' motion for judgment on the pleadings and DENIES summary judgment.

As to the third claim for relief, the Court GRANTS Defendants' motion for judgment on the pleadings against Casey, with leave to amend, and DENIES the motion as to Redding and Klaich. The Court GRANTS summary judgment to Redding and denies it to Klaich.

As to the fifth claim for relief, the Court GRANTS Defendants' motion for judgment on the pleadings, with leave to amend.

As to the seventh claim for relief, the Court DENIES Defendants' motion for judgment on the pleadings but GRANTS summary judgment.

IT IS SO ORDERED.

Dated this 29th day of October, 2014.

_____
ROBERT C. JONES
United States District Judge